**GRAPHIC SYSTEMS, INC.,**
**Plaintiff–Appellee,**

**v.**

**Dudley TAYLOR, Commissioner of Revenue for the State of Tennessee,**
**Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

May 21, 1990.

Bill C. Clifton and Michael J. Stengel, Clifton & Stengel, Memphis, for plaintiff-appellee.

Charles W. Burson, Atty. Gen. and Reporter and Cynthia Odle–Schlecty, Asst. Atty. Gen., Nashville, for defendant-appellant.

## OPINION

DROWOTA, Chief Justice.

In this tax case the Defendant, the Tennessee Commissioner of Revenue, appeals a decision of the Chancellor awarding Plaintiff taxpayer, Graphic Systems, Inc., a refund of a civil fraud penalty paid under protest. Following an audit, the Commissioner had determined there was a deficiency in the amount of taxes the Plaintiff paid. The Commissioner assessed a civil fraud penalty against the Plaintiff equal to 100% of the tax due ($118,978.00). Plaintiff paid the penalty and then sued for a refund.

After a trial, the Chancellor held that the State had failed to carry its burden of proof as to willful intent to defraud and granted Plaintiff judgment in the penalty amount plus interest and attorneys' fees pursuant to Tenn.Code Ann. § 67–1–1803(b) and (d) (Supp.1986). On appeal, the Commissioner argues that the Chancellor erred in refusing to apply the presumption of fraud under Tenn.Code Ann. § 67–1–802(d)(2) (1983). For the following reasons, we affirm the Chancellor's judgment.

Plaintiff, Graphic Systems, Inc., is a small Tennessee business that was begun in 1978 and incorporated by two shareholders in 1979. The equal shareholders, Tom Mitchell and Dennis Kopcial, have always held respective offices of President and Secretary. Mitchell's primary responsibility was sales, and Kopcial's responsibility was in the area of office administration, which included preparation of sales and use tax returns. Kopcial prepared all the sales and use tax returns for the corporation until sometime after May of 1983 when the bank insisted that financial statements be prepared by an outside accounting firm in order to obtain a loan.

Plaintiff was in the business of supplying business forms. Part of the Plaintiff's business was supplying Federal Express with air bill forms. These air bill forms were ordered from General Business Forms (GBF), a manufacturer outside of Tennessee, and usually shipped directly to Federal Express. Federal Express would then generally remit payment to the manufacturer who in turn would pay over a commission to Plaintiff. It was Plaintiff's responsibility, however, to collect the use tax from Federal Express and pay it over to the Commissioner of Revenue. From all of the testimony contained in the record, this was a most unusual way of doing business. Plaintiff devised a system to account for or collect the use tax from Federal Express. It utilized what they called a "T" invoice. This invoice was sent to Federal Express and Federal Express was to pay this amount over to Plaintiff which represented the amount of tax owed for the sales invoice.

For the first few months this system seemed to work but as business expanded and the sales invoices started coming through Plaintiff's office in increasing numbers the accounting practices became confused. Plaintiff started keeping a workbook where payments were recorded and the taxes were then paid over to the Commissioner as they were paid to the Plaintiff. Federal Express sometimes did not pay promptly and oftentimes Federal Express made discounts on the "T" invoices which made the Plaintiff think that payments on these accounts were not only for taxes.

The Commissioner audited Plaintiff's sales and use tax returns for the months of August, 1981, through May 1983, inclusive. The Commissioner determined that Plaintiff had collected tax of $118,978.00 from Federal Express that it had failed to report and pay over to the Commissioner. As a result, the Commissioner made a tax adjustment in the amount of $118,978,000, and assessed a civil fraud penalty against the Plaintiff in the amount of the tax due. Plaintiff paid the penalty under protest and then sued, pursuant to Tenn.Code Ann. § 67–1–1802(c)(1) (Supp.1986), for a refund. After a trial, the Chancellor held that the Commissioner had failed to carry its burden of proof as to fraud, and awarded judgment to the Plaintiff in the full amount of the penalty, plus attorney's fees and interest.

The Tennessee Department of Revenue assessed the civil fraud penalty against Plaintiff pursuant to Tenn.Code Ann. § 67–1–802(d). The Commissioner argues on appeal that the Chancellor erred in not applying that statute's presumption of fraud to the trial of this case.

Tenn.Code Ann. § 67–1–802(d) provides:

(d)(1) In the absence of any other specific provision therefor and except as there may otherwise be provided by law an equally stringent penalty, whenever a person required to pay or to make a return for the purpose of ascertaining the amount payable of any tax imposed under any revenue laws administered by

the commissioner of revenue fails to do so with an intent to evade the tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, there shall be added to the amount of the tax determined by the commissioner to be due a specific penalty in an amount equal to one hundred percent (100%) of the total amount of the tax due and not paid.

(2) A failure to either register as a seller, or to file a return, or to pay the tax by one who charges or passes on the tax to others **shall constitute a presumption of fraud within the purview of this subsection (d).** Such presumption may be rebutted only if the taxpayer makes an affirmative showing of an intent to pay the tax and/or to comply with any other requirement of the taxing statute.

[Emphasis added]

The Chancellor refused to apply the presumption of fraud because Plaintiff applied for a refund under Tenn.Code Ann. § 67–1–1802(c)(1), which provides for a *de novo* trial of the suit.

Tenn.Code Ann. § 67–1–1802(c)(1) provides:

Upon denial by the commissioner of a claim for refund, or upon the expiration of the six month period following receipt by the commissioner of the claim, whichever occurs first, the taxpayer may file suit against the commissioner of revenue within six (6) months in the appropriate chancery court of this state for a refund. The chancery court shall conduct a de novo trial of the suit.

The Chancellor found that the *de novo* trial provisions of Tenn.Code Ann. § 67–1–1802(c)(1) placed the burden of proof on the Commissioner in the Plaintiff's suit for refund of the fraud penalty.

■ There have been no Tennessee cases interpreting the civil fraud penalty found at Tenn.Code Ann. § 67–1–802(d). The statute provides that a civil fraud penalty shall be assessed whenever a taxpayer willfully attempts to evade or defeat the payment of tax in any manner. The statutory scheme provides that both the decision to

assess and the assessment itself shall be made by the Commissioner. When making his determination of whether the taxpayer willfully attempted to evade or defeat the payment of tax in some manner the Commissioner is to presume fraud when the taxpayer fails to "either register as a seller, or to file a return, or to pay the tax by one who charges or passes on the tax to others." Tenn.Code Ann. § 67–1–802(d)(2).

*Marchica v. State Board of Equalization,* 107 Cal.App.2d 501, 237 P.2d 725 (1951) involved a California Civil Fraud penalty similar to Tennessee's. The Commissioner of Revenue assessed a fraud penalty against the petitioner. The petitioner paid the penalty and then sued for refund of sales tax, interest, and penalties. The Commissioner argued that fraud was presumed and that the plaintiff had the burden to rebut the presumption. The Court held that the presumption of fraud in the civil penalty statute was a procedural tool enabling the Commissioner to assess the penalty against the Petitioner, but that the Commissioner had the burden of fraud in the suit for refund:

The existence of fraud or an intent to evade was essential to confer upon the board the power which it exerted. In the present case the deficiency assessment and the penalties were predicated on fraud. The fraud meant by the statute is actual, intentional wrongdoing and the intent required is the specific purpose to evade a tax believed to be owed. [citations omitted] The only evidence in this case is the failure to file correct returns. The burden of proving fraud is not sustained by merely establishing a deficiency. [citation omitted] The failure to file a correct return does not necessarily constitute fraud. [citation omitted] The mere omission from a tax return of items which should have been included does not show a fraudulent intent. [citation omitted] If returns are filed a deficiency necessarily arises from an understatement in the returns. An understatement may have resulted from ignorance, bad advice, honest mistake, negligence, or misrepresentation of law; none of which in itself would constitute fraud.

Fraud is odious. It is never presumed; but must be established by proof. The presumption always is in favor of good faith, innocence, honesty and fair dealing, except, perhaps, where confidential relations are involved. This presumption has been held to approximate in strength that of innocence of crime. [citations omitted]

. . . . .

In a suit for refund the action of the board in assessing a deficiency is presumed to be correct as to the amount of the tax and interest, and the taxpayer has the burden of overcoming the presumption. On the other hand, in such a suit the presumption is against fraud and the burden of proving fraud is on the board. . . .

*Marchica*, 237 P.2d at 731.

The presumption of fraud found in the civil fraud penalty statute in the case at bar is limited to "the purview of subsection (d)." Tenn.Code Ann. § 67–1–802(d)(2). The presumption contained in Tenn.Code Ann. § 67–1–802(d)(2) is to be used solely by the Commissioner in the administrative application of revenue statutes. It is a procedural tool to be used by the Commissioner to impose the fraud penalty when in his opinion the facts warrant the penalty. The presumption does not apply, however, in the *de novo* trial for a refund which an aggrieved taxpayer files pursuant to Tenn. Code Ann. § 67–1–1802(c)(1). The statute itself limits application of the presumption to "the purview" of the Commissioner's administrative determination. In the *de novo* suit for a refund the Commissioner has the burden of proving the Plaintiff's fraudulent intent in order to sustain the penalty.

In this instance the Chancellor held that the Commissioner had failed to carry its burden and that the deficiency of tax payments was the result of accident or honest mistake. The record amply supports this holding.

The record shows that when Mitchell and Kopcial formed Graphic Systems, neither had any experience or education or particular talent in bookkeeping and accounting.

Kopcial had a degree in psychology and had completed a few rudimentary, survey-type post-graduate courses in accounting for non-business majors. The proof shows that Kopcial set up the books of Graphic Systems in a simplistic single entry system which had no checks or balances. All of the witnesses testified that the triangular relationship between GBF, Plaintiff, and Federal Express, in which Plaintiff collected and paid Federal Express's use tax, was a highly unusual and complicated way of doing business. The unusual "T" invoice system Kopcial designed to keep track of the tax seemed to work for a while. Plaintiff's business expanded rapidly, however, and, as it expanded, the accounting practices became more and more confused. Federal Express' practice of paying the use tax late and occasionally making discounts on the "T" invoices further confused the Plaintiff's practices and outstripped the capacities of Plaintiff's simple record-keeping system.

The record reveals that after Dennis Kopcial relinquished the preparation of sales tax returns to an outside accounting firm in 1983, all taxes were collected and paid correctly. Owen Johnson, a partner in the C.P.A. firm hired by Plaintiff, testified that the Plaintiff's officers and employees were open and forthright with the C.P.A. firm. Owen Johnson testified further that when his firm began doing accounting work for Plaintiff the books were very rudimentary and in a state of disarray. The record at trial also shows that both company's officers were extremely cooperative and above board with the State auditors and investigators.

The evidence does not preponderate against the Chancellor's finding that the sole cause of the tax deficiency was accident or honest mistake. Accordingly, we affirm the Chancellor's judgment. The costs of appeal are taxed to the Commissioner.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.